GNAU *v.* MASONS' FRATERNAL ACCIDENT ASSOCIATION OF AMERICA.

1. INSURANCE—ARBITRATION—WAIVER—QUESTION FOR JURY.
   Whether a provision in an accident insurance policy requiring all disagreements to be settled by arbitration is waived, where the company, in its correspondence with the claimant, exhibits no desire to have the claim arbitrated, and states that if suit is brought it will place the matter in the hands of its attorneys, is a question for the jury.

2. SAME—PROOFS OF LOSS.
   An accident insurance company cannot insist that a claimant shall furnish further proofs of loss without pointing out wherein the proofs already submitted are defective, or what further information is desired.

3. MUTUAL BENEFIT SOCIETIES—MEMBERSHIP—BURDEN OF PROOF.
   Where the by-laws of a mutual benefit society provide that it shall in no case be liable to a beneficiary in a sum greater than that realized from one assessment upon its members, the burden of showing the membership of the society in a suit for benefits, in order to establish that the amount so realized would be less than the amount claimed, is upon the society, it being a matter peculiarly within its knowledge.

Error to Wayne; Frazer, J. Submitted April 7, 1896. Decided June 2, 1896.

*Assumpsit* by Caspar Gnau against the Masons' Fraternal Accident Association of America upon an accident insurance policy. From a judgment for plaintiff, defendant brings error. Affirmed.

*E. T. Wood,* for appellant.

*Morgan E. Dowling,* for appellee.

LONG, C. J. This action is brought upon an accident insurance policy issued to the plaintiff by the defendant on November 27, 1889. The certificate is for $5,000, and, among other things, it is agreed, by the certificate, to pay to the plaintiff the sum of $25 per week, for a period not exceeding 26 weeks, as indemnity for loss of time resulting from bodily injury during the life of said certificate, through external, violent, and accidental means, which should, independently of all other causes, immediately and wholly disable him from transacting any and every kind of business pertaining to his occupation. At the time the certificate was issued, the plaintiff was a merchant engaged in the hardware business in Detroit. The defendant was incorporated, under the laws of Massachusetts, as a mutual Masonic accident insurance company.

The facts, as shown upon the trial, were that on December 16, 1893, the plaintiff ascended a stepladder in his store, for the purpose of placing some goods upon a shelf, and, while standing upon the ladder, the fastening at the bottom accidentally broke, causing him to fall to the floor, fracturing his leg, and from which injury he became wholly disabled from transacting any business for a period of 20 weeks. Plaintiff had kept up his payments upon the certificate. On December 18, 1893, written notice was served upon the company of the accident and injury, and on May 7, 1894, the plaintiff mailed to

the defendant proofs of his loss and damage resulting
from his injuries. In June, following, he wrote the defendant company as to when he might expect to receive
his money. On June 20th the secretary of the company
responded, saying:

"In reply to yours of June 16th, I beg to say that, after
claims are reported to the office, they are put into what is
known as the 'investigating channel,' to be thoroughly
looked up before they are presented to the auditing committee for adjustment. Some of the papers in your case
have not yet been returned to the office. For that reason
you have heard nothing from it. We think, however, in
due time you will hear from it through the regular
channel."

On August 24th the plaintiff again wrote the secretary
of the company, asking payment of his claim. In reply
to this the secretary wrote:

"I beg to say that the reason of the delay in your case
arises from the fact that there is quite a discrepancy in
the dates given in the papers in your case received at this
office, and we have written to find out the reason that it
should occur. As soon as we ascertain, and can straighten
out these matters, we will advise you again."

On September 5th the plaintiff again wrote as follows:

"It seems to me this is a very small discrepancy to
worry about for nearly four months, and I am disgusted
with the manner in which you do business. My claim
was made out and handed in exactly as you dictated, and
approved by your resident surgeon, and there is no just
cause why you should withhold the payment of same. I
am fully decided that if I do not hear from you immediately, with check for amount of the claim, I shall put
the matter into the hands of my attorney."

In answer to this the secretary wrote:

"I beg to say that it is evident that you do not understand the working of the association, as I do not think
you really mean that you will put your claim into the
hands of your attorney. If that were really the fact, I

109 MICH.—34.

should turn all of your papers over to our attorneys, and the office would have nothing more to do with it; but, presuming that you do not understand that there is some error somewhere in the papers, I am sending you another blank to be filled out, which I trust you will attend to, and forward at as early a date as possible. * * * Trusting that I have made the matter plain, and that you will fill out the blank which we are sending you, and return at an early date, I remain,

"Yours, etc."

The plaintiff then placed the matter in the hands of his attorney, who, on October 11th, wrote the secretary, and, among other things, stated:

" Mr. Gnau declines to fill out the blank you sent him, marked ' Duplicate,' for the reason that he has already filled out such a blank and forwarded it to you, and this is all the law and his contract required him to do. * * * He has cheerfully met every requirement of his contract. He gave you due notice of the accident, he has furnished you with good and sufficient proofs of loss, and the time has elapsed for the payment of his claim. The only question to be settled is the question as to whether or not you intend to pay his claim, and he requests an immediate answer."

October 16th the secretary answered this letter, saying:

" Mr. Gnau has not complied with all the requirements of his contract. I am returning the duplicate blank to him to be filled out, which I trust he will do. He can have his case adjusted very much quicker by complying with the rules and requirements of the association, which he agreed to in his application, than to do otherwise. However, if he insists in putting it into the courts for settlement, we shall certainly defend the funds of the association. We are entitled to 90 days after satisfactory proof, and that we have not had, up to the present time."

Plaintiff's attorney thereafter wrote for a copy of the by-laws, which was furnished him, and on October 29th forwarded a statement to the company, from the plaintiff's attending physician, stating the time of the injury, and its extent. Nothing further was heard from the

company, when, on December 6th, plaintiff's attorney again wrote, asking settlement of the claim, to which, on December 11th, the secretary wrote:

"Replying to yours of December 6th, in regard to the case of Mr. Gnau, I beg to say * * * our directors desire to have all claims settled up before January 1st, and they have waited very patiently for his blank to be duly executed and returned to the office. Will you kindly see that he does so? We inclose another blank, for fear that he may have mislaid the former one."

In answer to this, plaintiff's attorney wrote the secretary that a suit had been commenced, and said:

"Mr. Gnau regrets the necessity of suing, but the certificate of insurance requires him to bring suit within a year from the day of the accident. Any time the company is ready to pay the claim, the suit will be discontinued without costs."

The by-laws of the association, by section 3, provide:

"Any disagreement in the settlement of losses that is not provided for in the application, certificate, occupation manual, or by-laws, may be settled by arbitration, whereby the insured shall select one who shall be a Mason in good standing, one shall be selected by the association, and these two shall select a third, all of whom shall be members of the Masonic fraternity in good standing, and shall constitute a board of arbitration."

Section 8 of the certificate reads as follows:

"No legal proceedings for recovery hereunder shall be brought until the expiration of three months after receipt by the association of acceptable proofs of loss; and the association shall not be required, in case of a disagreement between the certificate holder and the beneficiary and the association as to liability, to arbitrate the question of liability, as by the rules of this association it is provided, and no suit shall be brought at all, and the said association shall not be bound to arbitrate at all, unless the said suit is brought or such arbitration is in writing demanded within one year from the date of the alleged accident; and no suit shall be brought in any case except to enforce payment of the award

of the said arbitrators, unless the association refuse to arbitrate."

The certificate also provides as follows:

"The certificate holder shall be bound by the rules and regulations of this association."

And further:

"This association do not agree to pay to any certificate holder or beneficiary in any case, either by way of indemnity or benefit, a greater sum than is realized by the said association from one assessment of two dollars, made and assessed upon all assessable holders of certificates assessable at the date of the accident; and provided, further, that no indemnity or benefit shall be due or payable until 90 days after the receipt by the said association of satisfactory proof of loss."

At the close of the testimony, defendant's counsel requested the court to charge:

"1. There is no evidence in this case that said association, from one assessment of two dollars, made and assessed as aforesaid, has sufficient funds to pay the amount claimed by the plaintiff, and such proof is necessary to a recovery.

"2. The correspondence and evidence in this case show that the plaintiff had not furnished to the defendant satisfactory proofs of loss, as required by the terms of the contract of insurance, and your verdict should be for the defendant.

"3. Under the eighth paragraph of the contract of insurance, no suit can be maintained until after an arbitration is had. No arbitration has been had, and defendant has not refused to arbitrate. This suit was therefore prematurely brought, and your verdict should be for the defendant.

"4. The evidence in this case shows that the plaintiff, on October 29, 1894, practically conceded that the proofs of loss previously furnished by him were not satisfactory, by furnishing the defendant, on said date, other and additional proofs of loss. I charge you that, under the contract of insurance between the plaintiff and the defendant, the loss, if any, is not payable by the defendant until 90 days after receipt of satisfactory proofs of loss; and

this suit, having been commenced before the expiration of said 90 days, is premature, and your verdict should be for the defendant.

" 5. I charge you that, under the pleadings and evidence in this case, the plaintiff is not entitled to recover."

These requests were refused to be given in charge to the jury.

The court charged the jury, substantially, that the right to arbitrate might be waived by the defendant, and if they found by the evidence that the company did not agree to arbitrate, or that, by any statement made by it, it was shown to be willing to go into court, and adjust the matter with the plaintiff in a court of law, and that position was taken by the company, or the authorized agent of the company, in dealing with Mr. Gnau in relation to the claim, the jury might find that the company thus refused to arbitrate. The court then said :

"It is not necessary that this refusal should be made in any express terms, but by the action or conduct of the defendant or its agents, if it expressed its willingness to try this case in court, that would amount to a waiver, and that the terms of this policy had been complied with. * * * It is your privilege, if you find those facts that will justify it, to say whether or not this defendant did refuse to arbitrate, within the meaning of this policy and these by-laws."

Upon the question of furnishing satisfactory proofs of loss, the court stated, substantially, that it was the duty of the plaintiff to furnish to the defendant proofs of loss as to the accident that happened to him, and the disability, and everything that was required under the policy and by-laws ; that it was the duty of the company to speedily notify him of any defects in the proofs of loss, so that he might supply them within the time limited in the policy, and, if the company was derelict in that, it could not complain that such proofs were not furnished ; that the company could not so delay the proofs as to bar, or interfere with, the assured's right of recovery ; and that it was a question for the jury to determine whether anything

of the kind had been done by the company. The court further stated that the company could not arbitrarily say that it was not satisfied with proofs of loss, but must show why it was not satisfied, and such objection must be reasonable, and within the terms of the contract; and the court stated, further:

"If it neglect to do this within a reasonable time, then the right to recover attaches at once when that reasonable time has elapsed; and in no event, I charge you, could the assured be required to wait longer than within the year prescribed by the policy, and in bringing his suit he had to bring it within a year."

Under this charge the plaintiff recovered verdict and judgment for $500.

1. It is apparent that there was no request or desire on the part of the defendant to have the claim arbitrated. Instead of making a claim to have the question of liability arbitrated, the secretary, when a demand was made for the money, and a threat made to bring suit, stated that, if that course were taken by the plaintiff, the company would put the case into the hands of its attorneys, and the office would have nothing further to do with the matter. The court very properly left the question of waiver of such provision of the contract to the jury to determine. The question of waiver of this provision was a proper one for the jury, and was very fairly submitted by the court.

2. The question of sufficient proof of loss was also fairly submitted for the consideration of the jury. The defendant company could not arbitrarily insist upon further proofs of loss. In all the correspondence had in reference to further proof, the company utterly failed to point out how such proofs were defective, or what further information was desired. The whole correspondence shows a desire to delay the payment and put the claimant off until the time in which suit could be brought had expired, and the jury evidently found that the conduct of the company was without excuse.

3. When the plaintiff had shown his right to recover for the accidental injury, if the defendant desired to contest the amount on the ground that one assessment would not produce the amount claimed, the opportunity was open to it. The burden of showing the membership was not upon the claimant. These were facts especially within the knowledge of the defendant, and could not well be known to the plaintiff. This brings the case out of the general rule that the party holding the affirmative of the issue takes the *onus* of proof. The proof was within the peculiar knowledge of the defendant, and could readily have been shown. The case falls within the rule laid down in *People* v. *Swineford,* 77 Mich. 582, 583, and cases there cited.

The judgment must be affirmed.

The other Justices concurred.