UNITED BENEVOLENT ASSOCIATION v. MRS. MARY L. CASS.

Decided March 31, 1909.

**Insurance—Benefit Society—Increase of Assessments.**

Where the constitution and by-laws of a fraternal benefit insurance order authorizes its governing body to change and increase the rate of assessments against its members for meeting its obligations, and the application and benefit certificate issued thereon recognizes the right of the company to so increase its assessments, the beneficiary of a certificate cannot enforce its collection when the deceased member, failing to pay either the original or increased assessment, had thereby forfeited his rights under the certificate in accordance with the rules of the order.

Appeal from the District Court of Milam County. Tried below before Hon. J. C. Scott.

*Pierson & Starnes,* for appellant.—In a suit upon a contract where there is a condition or conditions precedent and the one is entitled to recover on said contract he must plead and prove the performance of such condition precedent. Clark on Contracts, sec. 667; Niblack on Fraternal Insurance, secs. 620-22; Van Norman v. Wheeler, 13 Texas, 319; Leigh v. Linthecum, 30 Texas, 103.

A member is charged with knowledge of the rules and by-laws of a fraternal benefit association and is bound by them and entitled to the rights and privileges conferred by them. Splawn v. Chew, 60 Texas, 535; United Moderns v. Colligan, 34 Texas Civ. App., 173; Bacon on Benefit Societies, sec. 160; Niblack on Fraternal Insurance, sec. 16.

The change made in the rates of assessment by the defendant association was within the contemplation of the parties to the contract. Mock v. Supreme Council R. A., 106 N. Y. Supp., 155; Williams v. Catholic M. B. A., 152 Mich., 1; Shipman v. Protected Home Ass'n, 174 N. Y., 398; Evans v. Association, 182 N. Y., 453; Sabin v. Phinney, 134 N. Y., 423; Dowdall v. Catholic M. B. A., 123 N. Y. S. C. App. Div., 913; Wright v. Maccabees, 106 N. Y. Supp., 1150.

*G. T. Moore* and *Monta J. Moore,* for appellee.—Appellee's petition alleged fully that appellant, in January, 1901, breached the contract (the benefit certificate sued on) with appellee and insured by unlawfully raising their assessment and declaring that it would not carry out said contract and would not accept assessments of the sum of $3.65 provided for by said contract, and thereby appellee and insured were relieved of paying or offering to pay assessments after that date. Girard L. Ins. Co. v. Mutual Ins. Co., 86 Pa. St., 236; Wilcuts v. Northwestern Ins. Co., 81 Ind., 300; Kilgore v. Northwestern Texas, etc., Co., 37 S. W., 473; Markowitz v. Greenwall T. Co., 75 S. W., 74; American Legion of Honor v. Batte, 79 S. W., 630, 34 Texas Civ. App., 456; American Legion of Honor v. Story, 75 S. W., 901; Tinsley v. Foster, 25 S. W., 298; 7 Am. & Eng. Ency. of Law, 153.

RICE, ASSOCIATE JUSTICE.—This suit was instituted by appellee against appellant for the recovery of $2,000 with interest and penalties, claimed to be due her on a joint benefit certificate theretofore issued by appellant upon the life of herself and her deceased husband, she being the beneficiary named therein.

The facts as gathered from the allegations of the petition are to the effect that at the time of the issuance of said certificate the association had a rate of assessments whereby its charges against each member was fixed, and by this rate the assessment against the plaintiff and her deceased husband was placed at $3.65 for each of them, but that thereafter appellant, through its Supreme Lodge, passed a certain by-law requiring appellee and her deceased husband to pay to said Association on each assessment levied thereafter the sum of $4.25, whereby it declared it would no longer receive or accept from appellee and her husband the sum of $3.65 for each assessment, and thereby it breached its said contract; that appellee's deceased husband, Nathaniel Cass, died on August 20, 1906, thereby maturing said certificate, and that the

association was informed of his death and had failed and refused on demand to pay said amount.

Appellant answered, setting up the fact that it was a fraternal benefit society incorporated under the laws of this State for the purposes incident to such associations, and that its certificates of membership were issued subject to its constitution and by-laws, rules and regulations, and amongst other things its laws provided that all assessments should be paid monthly in advance on the 5th of each month, and that the insured, Nathaniel Cass, had failed to pay any assessments since the 5th of October, 1901, and had failed to pay any amount whatever upon said certificate since that time; that in the application for membership made by plaintiff and her said husband, which is a part of said contract of insurance sued upon herein, it is provided that in the event of the failure or neglect to pay any assessments, monthly payments or dues, as prescribed by the laws of said association, said certificate should become null and void, and all rights, title and interest therein, as well as the rights of the heirs and beneficiaries to the benefits and privileges accruing thereunder, should be forfeited. That it likewise contained a provision whereby the insured agreed that he would be governed, and that the contract of insurance should be controlled by the laws and regulations enacted by the Supreme Lodge of the United Benevolent Association, and the rules and regulations which may be adopted by the Supreme Lodge of the association governing said association now in force, or that may be hereafter from time to time enacted by said Supreme Lodge, or submit to the penalties therein contained. It was further alleged that in the month of February, 1901, appellant, through its Supreme Lodge, made certain changes in the rate of insurance to be uniformly applied to all the certificates according to the ages of its members, and that by such change the assessments of plaintiff's certificate were increased from $3.65 to $4.25 each, as alleged in plaintiff's petition; that said insured, Nathaniel Cass, accepted said raise and paid the increased assessment for the months of March, April, May, June, July, August and September, 1901, whereby he waived all objections thereto, and that said raise was already binding upon the insured by virtue of the stipulations contained in his application for insurance and his certificate of insurance, and by virtue of the constitution and laws of the order; that on account of the failure of the said Cass to make any payments to said association of his assessments since October, 1901, he had forfeited all rights whatever under his said certificate of insurance, and that the same, in accordance with the constitution and by-laws, as well as said application for insurance, became thereby null and void and of no effect. It was further alleged that, at the time of the increase by the company of said assessments, the same was necessary by reason of the fact that the company's income was not sufficient to meet the liabilities during said year, and that in order to protect said certificate of Nathaniel Cass, and to protect and promote its own existence, it was compelled to raise its rates, and that such raise was in contemplation of the parties under the contract and the constitution and by-laws of said organization.

There was a trial before the court without a jury, and judgment for

plaintiff for $2,000, with accrued interest, from which this appeal is prosecuted.

The uncontradicted evidence shows "that the deceased, Nathaniel Cass, together with the plaintiff his wife, Mary L. Cass, by joint or mutual certificate became members of the appellant association on the 20th of July, 1900; that they paid the assessments as levied by the Supreme Lodge of the association from said 20th of July, 1900, up to and including the month of September, 1901. They made no payment nor tender of payment for the month of October, 1901, nor thereafter, and were regularly suspended by the appellant association for the non-payment of the October, 1901, assessment. From the time plaintiff and her deceased husband Nathaniel Cass became members of appellant association July 20, 1900, up to and including the month of January, 1901, they paid monthly assessments at the rate of $3.65 per month each, at which time the rate was raised so as to make their joint assessment $4.25 each per month, and from the month of February up to the month of September, inclusive, 1901, they paid the assessment of $4.25 per month, being suspended for the nonpayment of the October, 1901, assessment, since which date plaintiff and her deceased husband, Nathaniel Cass, stood suspended from and dropped out of said order. Plaintiff's husband, Nathaniel Cass, died on the 20th day of August, 1906, five years after they had lapsed out of the order, and forfeited their membership, together with their rights and privileges thereunder. The constitution and by-laws of appellant, together with the application for membership and certificate issued to them, were in evidence from which it appears that it was agreed that they were to abide by and be controlled by the laws, rules and regulations enacted by the Supreme Lodge of the order, and those which may thereafter be adopted by it; second, that a failure or neglect to pay any assessment or monthly dues, as prescribed by the association, or if the member in any manner should sever his connection or membership with the Association, said certificate shall become null and void, and all rights, title and interest in and to the same, as well as the rights of the beneficiaries thereunder, shall be forfeited; and that if the members fail to pay their assessments in advance on or before the 5th of each current month for which said assessment is due to the local secretary of his lodge, the member so in default shall be suspended from that date; third, that they would pay to the association each assessment authorized by its constitution and laws according to their ages at the date of their application for membership during life or until otherwise ordered by the Supreme Lodge, and such assessment may at any time be changed by the Supreme Lodge. The association's table of rates in force at the time plaintiff and her husband became members levied an assessment in the sum of $3.65 each upon members of the ages of plaintiff and her husband. In January following the association, through its Supreme Lodge, passed a by-law or amendment to the constitution, raising its table of rates, so as to require members of the respective ages of plaintiff and her deceased husband to pay assessments in the sum of $4.25 for each assessment until changed by the Supreme Lodge.

It was further shown that at the time of raise of rates complained of by the plaintiff the association was badly involved, having at that .

time obligations on benefit certificates outstanding that it was unable to meet in the sum of $14,000; that the receipts for the year previous had fallen below the current losses for that year more than $10,000. It was also shown that the certificate of said association held by plaintiff and her deceased husband, as well as all other certificates, provided that the Supreme Lodge would pay upon same upon the death of the member, in conformity with the constitution and laws, such sums as may be derived from the benefit fund assessment during the month in which death occurs, not to exceed the amount named in the certificate, and same shall be accepted in full satisfaction of all demands against said Supreme Lodge by virtue of said certificate."

The question, therefore, involved in this appeal is whether the beneficiary of a member of a fraternal benefit insurance order can enforce collection of a certificate issued upon the life of the member, where the constitution and by-laws of the order authorize its Supreme Council to change and increase the amount of assessments against its members, where the deceased member has lapsed out of said order by a failure for several years to pay anything to the order, either on the original assessment or the increased assessment, when it appears that the application for membership, as well as the certificate so issued, expressly recognizes the right on the part of the Company to so increase its assessments.

We think this question must be answered in the negative, and that no such right to enforce collection under the circumstances as shown here would exist. It was held in the recent New York case of Mock v. Supreme Council Royal Arcanum, 106 N. Y. Supp., 157, where a similar question was involved, that the right to make a change in the rate of assessment existed where it was necessary to perpetuate the life of the society, and this was held to be true, notwithstanding the fact that there was no express provision in the by-laws allowing a change in rates. The court in that case bases its decision upon the idea that there was no express provision in the by-laws to the effect that the rates should remain unchanged, the court saying that "when viewed in the light of the character and purpose of the organization no such provision against raising the rates should be implied. The defendant was organized upon the principles of equality and mutuality among its members, and it must have been fairly within contemplation of the parties that changes of membership might necessitate changes in the rates in order to preserve that equality. There was nothing in the by-laws limiting the amount which any member might be assessed. On the contrary, there were express provisions for extra assessments, and while the change complained of affects the proportionate amount which each member is required to pay, I think if it was necessary to preserve the equality among the members it should be deemed to have been within the contemplation of the parties to the contract. Each member of a society is an insurer, as well as an insured, and I think as an insurer he must be deemed to have contracted to pay his just and ratable share of the amount necessary to enable defendant to keep its contract with its members and pay their dependents the stipulated sum, and the parties should have understood that changed conditions might necessitate a readjustment of the rates, and hence that the society, under the re-

served power to amend its by-laws, assented. to by the plaintiff, could make such readjustment. The argument that the amount of assessment was as fixed and unalterable as the amount of the benefit to be paid entirely overlooks the purpose and character of defendant and the dual relation of its members. While the defendant probably could not destroy the plaintiff's contract by an unreasonable and arbitrary assessment, plaintiff should not be heard to say that the defendant may not do what is necessary to preserve its life and carry out its contract to pay its dependents the sum of $3,000 upon his death." See also the following cases: Shipman v. Protected Home Ass'n, 174 N. Y., 398; Wright v. Maccabees, 106 N. Y. Supp., 1150; United Moderns v. Colligan, 34 Texas Civ. App., 173.

Believing that the court erred in rendering judgment for the plaintiff under the facts proven, the judgment of the court below is reversed and here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.